UNITED STATES DISTRICT COURT
FOR THE DISTRICT MASSACHUSETTS

| | |
|---|---|
| ALEXANDER GRINIS, MICHAEL GORDON, and ANGEL SOLIZ, on behalf of themselves and those similarly situated,<br><br>Petitioners<br><br>v.<br><br>STEPHEN SPAULDING, Warden of Federal Medical Center Devens, and MICHAEL CARVAJAL, Director of the Federal Bureau of Prisons, in their official capacities,<br><br>Respondents. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*   NO. 20-cv-10738-GAO<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

## DECLARATION OF AMBER BOURKE, CASE MANAGEMENT COORDINATOR

I, Amber Bourke, do hereby declare, certify and state as follows:

1. I am employed by the United States Department of Justice, Federal Bureau of Prisons (BOP). I currently work as the Case Management Coordinator (CMC) at the Federal Medical Center in Devens, Massachusetts (FMC Devens). I have held this position since March 2020. I have been employed by BOP since October 2012.

2. The CMC's Office is dedicated to providing oversight of case management activities within the institution. This office works directly with the unit teams, providing training and disseminating information to insure that the institution is in compliance with Correctional Programs' policies and procedures. The CMC provides coordination and oversight of many programs within the institution, including, but not limited to, Central Inmate Monitoring, Financial

Responsibility, Admission and Orientation, Inmate Performance Pay, Victim/Witness Program and Adam Walsh Act compliance. The CMC also oversees the Correctional Systems Department.

3. FMC Devens is an Administrative security level institution designed to house approximately 1,200 inmates at the main facility and approximately 128 inmates at the adjacent Federal Prison Camp (FPC). The main FMC facility and FPC are separate facilities and the inmate populations do not interact. For purposes of this declaration, when I refer to "FMC Devens", I am referring to both the main Federal Medical Center (FMC) and the Federal Prison Camp (FPC), unless otherwise specified.

4. FMC Devens offers specialized services for sex offenders, specifically the Sex Offender Management Program.

## I. COMPASSIONATE RELEASE/ REDUCTION IN SENTENCE PROCEDURES.

5. BOP does not have the authority to provide inmates with "early release." A reduction of an inmate's federal sentence can only be accomplished by an Article III judge, and specifically, the inmate's sentencing judge. However, upon an inmate's request, the Director of BOP may make a motion to an inmate's sentencing court to reduce a term of imprisonment under 18 U.S.C. § 4205(g) and 18 U.S.C. § 3582(c)(1)(A). This process is outlined in BOP Program Statement 5050.50, *Compassionate Release/Reduction In Sentence Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)*. (This BOP program statement and all other program statements and operations memoranda cited herein are available at www.bop.gov via the Resources link). BOP invokes these statutory authorities in "extraordinary or compelling circumstances," which could not have reasonably have been foreseen by the court at the time of sentencing. The First Step Act, codified at 18 U.S.C. § 3582, specifies that an inmate may file

a Motion for Reduction of Sentence directly to the sentencing court after exhaustion of administrative remedies, or 30 days from the date the Warden receives such a request from the inmate, whichever is earlier. The determination of release is ultimately the decision of the sentencing court.

6. Upon information and belief, as has been submitted to me from the FMC Devens Reduction in Sentence Coordinator, within the past two weeks, approximately 114 Reduction in Sentence requests have been submitted by FMC Devens inmates, which includes 16 that were filed today alone. Of these pending and under review, 2 have been forwarded to BOP Central Office for further RIS consideration and approval as they have been determined by FMC Devens to meet RIS criteria.

7. Concerning the three named Petitioners in this case, each was reviewed for a Reduction in Sentence by FMC Devens. Alexander Grinis, Reg. No. 01014-138, submitted a RIS request on or about April 17, 2020 and was denied on or about April 21, 2020. The sole basis for his request was seeking a release based upon potential COVID infection. It did not meet the necessary criteria for a RIS under BOP policy.

8. Michael Gordon, Reg. No. 96426-038, submitted a request on or about April 13, 2020 and was denied on or about April 20, 2020. He also sought a release based on potential effects of a COVID infection, which alone does not meet the necessary criteria for a RIS under BOP policy.

9. Angel Soliz, Sr., Reg. No. 70926-079, submitted a request on or about August 19, 2019 and was denied on or about September 3, 2019. He was denied at that time as not having

an end of life trajectory such that he met the necessary criteria for a RIS under BOP policy. He has not submitted an appeal of that decision nor a request for a reconsideration.

## II. BOP'S AUTHORITY TO PLACE INMATES ON HOME CONFINEMENT.

10. Although BOP lacks the authority to release an inmate from his sentence, BOP has the authority to transfer a prisoner to home confinement for the remainder of his or her sentence pursuant to provisions and limitations set forth 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541. *See also* BOP Program Statement 7320.01, *Home Confinement* and BOP Operations Memorandum, *Home Confinement under the First Step Act*, both of which are available on www.bop.gov via the Resources link.

### A. BOP'S AUTHORITY UNDER 18 U.S.C. § 3624(c)(2).

11. Under 18 U.S.C. § 3624(c)(2), BOP has the exclusive authority to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. BOP, shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under section 3624(c)(2). During the inmate's incarceration, BOP institution staff are responsible for making referrals to Residential Reentry Centers (RRCs) or home confinement typically within 17-19 months of the prisoner's release date.

12. In order to appropriately evaluate an individual for home confinement, the staff assesses the risk of criminal activity in the community and determines whether there is an appropriate home where the individual can be placed. This is a time and resource intensive process. Upon receipt of the staff assessment, BOP reviews the assessment and makes the final

determination regarding home confinement. If approved, absent any disciplinary infractions, the inmate would serve the remainder of his or her sentence on home confinement.

B. BOP'S AUTHORITY UNDER 34 U.S.C. § 60541.

13. Under 34 U.S.C. § 60541, BOP may release some or all eligible elderly offenders and eligible terminally ill offenders from BOP facilities to home detention, upon written request from either BOP staff, or an eligible elderly offender or eligible terminally ill offender. The statute defines "eligible elderly offender" to include an inmate who is not less than 60 years of age; who is serving a term of imprisonment that is not life imprisonment based on a conviction for an offense or offenses that do not include any crime of violence; has served two-thirds of the term of imprisonment to which the offender was sentenced; who has not been convicted in the past of any Federal or State crime of violence, sex offense, or other offense referenced in the statute; who has not been determined by BOP to have a history of violence, or of engaging in conduct constituting a sex offense or other excluded offense; who has not escaped, or attempted to escape from a BOP institution; whose release to home detention will result in a substantial net reduction of costs to the Federal Government; and who has been determined by BOP to be at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention.

14. "Eligible terminally ill offender" is defined as an offender in the custody of BOP who meets all of the above-stated criteria except the age restriction, and has been determined by a medical doctor approved by BOP (i.e., Clinical Director of the local institution) to be in need of care at a nursing home, intermediate care facility, or assisted living facility, or diagnosed with a terminal illness.

15. In order to appropriately evaluate an elderly or terminally ill individual for home confinement, BOP assesses the risk of criminal activity in the community and determines whether there is an appropriate home where the individual can be placed. As mentioned earlier, this is a time and resource intensive process.

16. If approved, absent any disciplinary infractions, the inmate would serve the remainder of his or her sentence on home confinement.

17. Pursuant to the statute, a violation by an eligible elderly or terminally ill offender of the terms of home detention (including the commission of another Federal, State, or local crime) shall result in the removal of that offender from home detention and the return of that offender to an appropriate BOP institution, as determined by BOP.

18. Inmates that do not meet the criteria for the elderly home confinement can be placed on home confinement under BOP's general authority to do so, 18 U.S.C. § 3624(c)(2).

19. In light of the COVID-19 pandemic, BOP is maximizing its authority to place inmates on home confinement and is expediting the process as much as possible in furtherance of the Attorney General's memoranda dated March 26, 2020 and April 3, 2020. These documents directed BOP to prioritize the use of its statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic, and provided further guidance concerning criteria to be used.

C. THE CARES ACT.

20. The "Coronavirus Aid, Relief, and Economic Security Act" (CARES) Act, Pub.L. 116–136, authorizes the Attorney General to expand the cohort of inmates who can be considered for home confinement upon his finding of emergency conditions which are materially affecting

the function of BOP. On April 3, 2020, the Attorney General made that finding and authorized the Director of BOP to immediately maximize appropriate transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and other similarly situated BOP facilities where COVID-19 is materially affecting operations.

21. Pursuant to the Attorney General's direction, FMC Devens receives rosters of inmates to be considered for home confinement. That guidance mandates that the following criteria should be met when reviewing and referring inmates for home confinement: primary or prior offense is not violent; primary or prior offense is not a sex offense; primary or prior offense is not terrorism; no detainer for the inmate; the inmate's Mental Health Care Level is less than CARE-MH 4; the inmate's recidivism risk score is Minimum; the inmate has had no incident reports in the past 12 months (regardless of severity level); the inmate is a U.S. citizen; the inmate has a BRAVO score (custody classification) of Low or Minimum; the inmate has served 50% of their sentence; and the inmate has a viable release plan. As a result of FMC Devens' higher population of inmates convicted of sex offenses, many FMC Devens inmates are ineligible for home confinement. As part of this review, not only does Unit Team review each inmate, a review is conducted by the Special Investigative Services Department (SIS) and the Medical Department. SIS determines if the inmate has engaged in violent or gang-related activity in prison. Medical conducts multiple reviews. Initially, Medical must determine the age and vulnerability of the inmate related to COVID-19 risk factors in accordance with CDC and prevention guidelines. Additionally, Medical reviews the conditions under which the inmate would be confined upon release to determine whether those conditions

would present a lower risk of contracting COVID-19 than the inmate would face at the BOP facility, and also determines whether frequent and on-going medical care is required within the next 90 days.

22. To date, 8 inmates have been approved for transfers to home confinement. The inmates receiving transfers must quarantine for fourteen days prior to transfer. Two of the eight approved transfers have dates for transfer into home confinement for the week of April 27, 2020. Eight more inmates have previously been referred by FMC Devens Warden to the Regional Residential Reentry Manager and are being vetted for approval and placement dates. Ten additional inmates are in the final stage of review at FMC Devens and are soon to be sent to the Regional Residential Reentry Manager for consideration as well. To date, 118 inmates have been reviewed under the expanded criteria for home confinement placement and 91 have been denied home confinement as not meeting all of the stated criteria.

23. Concerning the three named Petitioners in this case, I will now detail the status and review of each for extended home confinement. First, Alexander Grinis, Reg. No. 01014-138, was previously reviewed and has a Residential Reentry Center Home Confinement date of May 21, 2020. This is his first eligibility date for home detention based on his 9-month sentence, with his Projected Release Date from BOP custody on June 16, 2020. Subsequent to the updated reviews for extended home confinement consideration, Grinis was reviewed again by Unit Team, SIS, and Medical within the above criteria. Medical found that Mr. Grinis fit the criteria for being at high risk for COVID-19, and he cleared the review by Unit Team and SIS as well. Unit Team was notified to reach out to the Regional Residential Reentry Manager (RRM) to see if an earlier date

could be obtained, since he was already approved for May 21, 2020. At this time, the date was just updated to a revised home confinement date of May 5, 2020.[1]

24. Michael Gordon, Reg. No. 96426-038, is currently serving a 15-year sentence with a Projected Release Date from BOP custody on August 18, 2027. He has served approximately 5 years and 5 months, which equates to only 36.6% of his term of imprisonment. Under the established criteria mentioned above, he is ineligible for consideration under the expanded home confinement reviews. His home detention eligibility date remains at February 18, 2027.

25. Angel Soliz, Sr., Reg. No. 70926-079, is currently serving a 20-year (240-month) sentence with a Projected Release Date from BOP custody on September 13, 2033. He has served approximately 4 years and 10 days, which equates to only 20.1% of his term of imprisonment. Additionally, Soliz is not a candidate for extended home confinement because his recidivism risk score is too high. He has a "Low" recidivism risk score, however a "Minimum" risk score is required. (This is a risk and needs assessment tool. Every inmate has a recidivism classification score. Pursuant to the reviews currently be conducted for expanded home confinement review, the lowest recidivism score of "Minimum" is required. Furthermore, Soliz currently has a detainer filed by the State of Texas for a Parole Violation Warrant filed on February 2, 2017. Under the

---

[1] It has just been relayed to me that Grinis is refusing to enter the required quarantine before his pending release to home confinement. This refusal to accept assignment into quarantine will result in a disciplinary action and the loss of his pending pre-release placement. Therefore, his placement into any home confinement date is currently subject to rescission upon the processing of a disciplinary action.

9

established criteria mentioned above, he is ineligible for consideration under the expanded home confinement reviews.

I declare that the foregoing is true and correct to the best of my knowledge and belief, and is given under penalty of perjury pursuant to 28 U.S.C. § 1746 this 22 of April, 2020.

RESPECTFULLY SUBMITTED,

AMBER BOURKE
Case Management Coordinator
FMC Devens