UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER GRINIS, MICHAEL GORDON, and ANGEL SOLIZ, on behalf of themselves and those similarly situated,<br><br>Petitioners<br>v.<br><br>STEPHEN SPAULDING, Warden of Federal Medical Center Devens, and MICHAEL CARVAJAL, Director of the Federal Bureau of Prisons, in their official capacities,<br><br>Respondents. | Civil Action No. 20-cv-10738-GAO |

## **DECLARATION OF AMBER BOURKE, CASE MANAGEMENT COORDINATOR**

I, Amber Bourke, declare the following under 28 U.S.C. § 1746, and state that under penalty of perjury the following is true and correct to the best of my knowledge and belief:

**I.    PERSONAL BACKGROUND**

1.    I am currently employed by the Federal Bureau of Prisons (BOP) of the United States Department of Justice, as as the Case Management Coordinator (CMC) at the Federal Medical Center in Devens, Massachusetts (FMC Devens). I have held this position since March 2020. I have been employed by BOP since October 2012.

2.    The CMC's Office is dedicated to providing oversight of case management activities within the institution. This office works directly with the unit teams, providing training and disseminating information to insure that the institution is in compliance with Correctional Programs' policies and procedures. The CMC provides coordination and oversight of many programs within the institution, including, but not limited to, Central Inmate Monitoring, Financial Responsibility, Admission and Orientation, Inmate Performance Pay, Victim/Witness Program and Adam Walsh Act compliance. The CMC also oversees the Correctional Systems Department.

## II. THE BOP'S AUTHORITY TO PLACE INMATES ON HOME CONFINEMENT

3. The BOP's statutory authority to transfer prisoners to home confinement rests in 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541. The BOP's policy and procedures regarding home confinement are outlined in BOP Program Statement 7320.01, *Home Confinement* and BOP Operations Memorandum, *Home Confinement under the First Step Act*, both of which are available on www.bop.gov via the Resources tab. Both statutes set forth certain limitations with respect to the BOP's transfer authority. *See* 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541. However, pursuant to the Attorney General's directives in light of the COVID-19 pandemic, dated March 26, 2020, and April 3, 2020, *infra*, and given the surge in positive cases at select sites, the BOP began immediately reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention (CDC), to determine which inmates are suitable for home confinement. Since the release of the Attorney General's original memorandum dated March 26, 2020, the BOP is prioritizing transfers to home confinement of all suitable inmates as an appropriate response to the COVID-19 pandemic.

## III. THE ATTORNEY GENERAL'S MEMORANDUM FOR THE DIRECTOR OF THE BUREAU OF PRISONS, DATED MARCH 26, 2020

4. On March 26, 2020, the Attorney General issued a Memorandum for the Director of the Bureau of Prisons (the March 26, 2020 Memorandum) to ensure that, in light of the COVID-19 pandemic, BOP utilizes home confinement, where appropriate, to protect the health and safety of BOP personnel and people in BOP's custody. Pursuant to the March 26, 2020 Memorandum, BOP is prioritizing the use of its statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic. It was noted in the March 26, 2020 Memorandum that many inmates will be safer in BOP facilities where the population is controlled and there is ready access to doctors and medical care. But for some eligible inmates, home confinement might be more effective in protecting their health.

5. In assessing whether home confinement should be granted pursuant to the March 26, 2020 Memorandum, BOP considers the totality of circumstances for each individual inmate, the statutory requirements for home confinement, and the following non-exhaustive list of discretionary factors:

    a. The age and vulnerability of the inmate to COVID-19, in accordance with the CDC guidelines;

    b. The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;

    c. The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment;

    d. The inmate's score under PATTERN (the Prisoner Assessment Tool Targeting Estimated Risk and Need),[1] with inmates who have anything above a minimum score not receiving priority treatment;

    e. Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;

    f. The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offenses, will render an inmate ineligible for home confinement. Other serious offenses weigh heavily against consideration for home confinement.

6. In addition to setting forth these factors, the March 26, 2020 Memorandum stated that before granting any inmate discretionary release, the BOP Medical Director, or someone he designates, will, based on CDC guidance, make an assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risk of COVID-19 at the location in which the inmate seeks home confinement. The BOP will not grant home confinement to inmates when doing so is likely to increase their risk of contracting COVID-19. The BOP will grant home confinement only when it has determined -

---

[1] For more information on PATTERN, please visit www.bop.gov via Inmates/ First Step Act tab.

- based on the totality of circumstances for each individual inmate -- that transfer to home confinement is likely not to increase the inmate's risk of contracting COVID-19.

7. Moreover, the March 26, 2020 Memorandum noted that for the protection of the public, any inmate to whom BOP grants home confinement is to be placed in a mandatory 14-day quarantine before that inmate is discharged from a BOP facility to home confinement. Inmates transferred to home confinement under this prioritized process are also subject to location monitoring devices and, where a court order is entered, are subject to supervised release.

## IV. THE CARES ACT AND THE ATTORNEY GENERAL'S MEMORANDUM FOR THE DIRECTOR OF THE BUREAU OF PRISONS, DATED APRIL 3, 2020

8. The Coronavirus Aid, Relief, and Economic Security (CARES) Act, Public Law No. 116-236 (enacted March 27, 2020), authorizes the Attorney General to expand the cohort of inmates who can be considered for home confinement upon his finding of emergency conditions which are materially affecting the function of the BOP. On April 3, 2020, the Attorney General made that finding, and in a Memorandum for the Director of the Bureau of Prisons (April 3, 2020 Memorandum), authorized the Director to immediately maximize appropriate transfers to home confinement of all appropriate inmates held at BOP facilities where the Director determines that COVID-19 is materially affecting operations.

9. The April 3, 2020 Memorandum specifically stated that the BOP must move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of FCI Oakdale, FCI Danbury, and FCI Elkton, and to give priority to those institutions, and others similarly affected, as the BOP continues to process the remaining inmates who are eligible for home confinement under pre-CARES Act standards.

10. The April 3, 2020 Memorandum directed that the BOP give priority in implementing the new standards to the most vulnerable inmates at the most affected facilities and was explicit that the BOP should begin implementing this directive immediately at the identified facilities and any other facilities at risk of similar problems. The April 3, 2020 Memorandum stated that the review should include a much broader pool of at-risk inmates— not only those who were eligible for transfer prior to the Attorney General exercising his authority under the CARES Act.

11. For inmates deemed suitable candidates for home confinement, the April 3, 2020 Memorandum directed the BOP to immediately process these inmates for transfer and then immediately transfer them following a 14-day quarantine at an appropriate BOP facility. The April 3, 2020 Memorandum further authorized BOP to, in appropriate cases, require that the inmate being transferred undergo his or her 14-day quarantine in the residence to which the inmate is being transferred rather than in the BOP facility from which the inmate is being transferred. The assessment of all inmates remains guided by the factors in the March 26, 2020 Memorandum.

12. The April 3, 2020 Memorandum also recognized that the BOP has limited resources to monitor inmates on home confinement and that the U.S. Probation Office is unable to monitor large number of inmates in the community, and authorized the BOP to transfer inmates to home confinement even if electronic monitoring is not available, so long as it determines in every instance that doing so is appropriate and consistent with the obligation to protect public safety.

13. Lastly, the April 3, 2020 Memorandum stated that it is essential for the BOP to continue making determinations for home confinement in a careful and individualized way that remains faithful to the duty of protecting the public and law enforcement officers.

## V. THE BOP'S IMPLEMENTATION OF THE MARCH 26, 2020 AND THE APRIL 3, 2020 MEMORANDA

14. The BOP is devoting all available resources to executing the Attorney General's directives, with such resources tailored and prioritized according to the needs of individual institutions across the country. The BOP is assessing the inmate population to determine which inmates would be appropriate for transfer under this priority program. The BOP is then processing those inmates for transfer as expeditiously as possible.

15. The BOP is also frequently updating its public website to provide information and responses to frequently asked questions regarding its response to the COVID-19 pandemic, including providing information regarding its implementation of the Attorney General's directives.

16. The BOP has increased home confinement since March 2020, and is continuing to aggressively screen inmates for home confinement. Since the March 26, 2020 Memorandum instructing the BOP to prioritize home confinement as an appropriate response to the COVID-

19 pandemic, the BOP has placed an additional 1,501 inmates on home confinement. *See* www.bop.gov (last visited April 24, 2020).

17. Inmates do not need to apply to be considered for home confinement. BOP Case Management staff are urgently reviewing all inmates to determine which ones meet the criteria established by the Attorney General. While all inmates are being reviewed for suitability for home confinement, any inmate who believes he or she is eligible may request to be referred to home confinement and provide a release plan to his or her Case Manager.

18. It should be noted that for public safety reasons, in accordance with the March 26, 2020 Memorandum, and to ensure BOP is deploying its limited resources in the most effective manner, the BOP is currently assessing a number of factors to ensure that an inmate is suitable for home confinement including, but not limited to, reviewing the inmate's institutional discipline history for the last twelve months; ensuring that the inmate has a verifiable release plan; verifying that the inmate's primary offense is not violent, a sex offense, or terrorism related; and confirming the inmate does not have a current detainer.

19. In addition, and in order to prioritize its limited resources, BOP has generally prioritized for home confinement those inmates who have served a certain portion of their sentences, or who have only a relatively short amount of time remaining in those sentences. While these priority factors are subject to deviation in BOP's discretion in certain circumstances and are subject to revision as the situation progresses, BOP is at this time prioritizing for consideration those inmates who either (1) have served 50% or more of their sentences, or (2) have 18 months or less remaining in their sentences and have served 25% or more of their sentences. As BOP processes the inmates eligible for home confinement under these criteria and learns more about the COVID-19 pandemic and its effect on BOP facilities, it is assessing whether and how to otherwise prioritize consideration.

20. If the incarcerated individual does not qualify for home confinement under BOP criteria, an inmate may be reviewed for placement in a Residential Reentry Center and home confinement at a later stage in accordance with applicable laws and BOP policies.

## VI. MEASURES TO PROTECT INMATE AND STAFF SAFETY

21. In response to the pandemic, BOP has taken significant measures to protect the health of the inmates in its charge. These steps include, but are not limited to the following:

a. Beginning April 13, 2020, BOP implemented Phase Six of the Action Plan, which currently governs operations. The current modified operations plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters for a period of at least 14 days, in order to stop any spread of the disease. Only limited group gathering is afforded, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited the movement of inmates and detainees among its facilities. Though there will be exceptions for medical treatment and similar exigencies, this step as well will limit transmissions.

b. All staff and inmates have been and will continue to be issued an appropriate face covering and strongly encouraged to wear the face covering when in public areas when social distancing cannot be achieved.

c. Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. In addition, in areas with sustained community transmission and at medical centers, all staff are screened for symptoms. Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone. A staff member with a stuffy or runny nose can be placed on leave by a medical officer.

d. Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened for symptoms and risk factors.

e. Social and legal visits were stopped as of March 13, 2020, and remain suspended until at least May 18, 2020, to limit the number of people entering the facility and interacting with inmates. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended. Legal

   visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols in place for prison staff, contractors, and visitors.

 f. Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

## VII. COMPASSIONATE RELEASE / REDUCTION IN SENTENCE PROCEDURES

22. The BOP lacks the authority to provide inmates with a reduction in sentence through compassionate or "early release." Rather, only an Article III judge—specifically, the inmate's sentencing judge—may authorize such a reduction of an inmate's federal sentence. However, on an inmate's request, the Director of the BOP may make a motion to an inmate's sentencing court to reduce a term of imprisonment under 18 U.S.C. § 4205(g) and 18 U.S.C. § 3582(c)(1)(A). The BOP uses these statutory authorities in "extraordinary or compelling circumstances" which could not reasonably have been foreseen by the court at the time of sentencing. This process is outlined in BOP Program Statement 5050.50, *Compassionate Release/Reduction In Sentence Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)*. (This BOP program statement is available at www.bop.gov via the Resources tab).

23. Additionally, the First Step Act specifies that an inmate may file a Motion for Reduction of Sentence directly in the sentencing court after exhaustion of administrative remedies, or 30 days from the date the warden receives such a request from the inmate, whichever is earlier. *See* 18 U.S.C. § 3582(c)(1)(A).

## VIII. FMC DEVENS AND STATUS OF PETITIONERS

24. FMC Devens is an Administrative security level institution designed to house approximately 1,200 inmates at the main facility and approximately 128 inmates at the adjacent Federal Prison Camp (FPC). The main FMC facility and FPC are separate facilities and the inmate populations do not interact. For purposes of this declaration, when I refer to "FMC Devens", I am referring to both the main Federal Medical Center (FMC) and the Federal Prison Camp (FPC), unless otherwise specified. FMC Devens offers specialized services for sex offenders, specifically the Sex Offender Management Program.

25. Pursuant to the Attorney General's direction, FMC Devens receives rosters of inmates to be considered for home confinement. As a result of FMC Devens' higher population of inmates convicted of sex offenses, many FMC Devens inmates are ineligible for home confinement. In addition to the established guidance set forth above, not only does Unit Team review each inmate, a review is conducted by the Special Investigative Services Department (SIS) and the Medical Department. SIS determines if the inmate has engaged in violent or gang-related activity in prison. Medical conducts multiple reviews. Initially, Medical must determine the age and vulnerability of the inmate related to COVID-19 risk factors in accordance with CDC and prevention guidelines. Additionally, Medical reviews the conditions under which the inmate would be confined upon release to determine whether those conditions would present a lower risk of contracting COVID-19 than the inmate would face at the BOP facility, and also determines whether frequent and on-going medical care is required within the next 90 days.

26. To date, 8 inmates have been approved for transfers to home confinement. The inmates receiving transfers must quarantine for fourteen days prior to transfer. Two of the eight approved transfers have dates for transfer into home confinement for the week of April 27, 2020. Twelve more inmates have previously been referred by FMC Devens Warden to the Regional Residential Reentry Manager and are being vetted for approval and placement dates. Seven additional inmates are in the final stage of review at FMC Devens and are soon to be sent to the Regional Residential Reentry Manager for consideration as well. To date, 118 inmates have been reviewed under the expanded criteria for home confinement placement and 87 have been denied home confinement as not meeting all of the stated criteria.

27. Each of the three named Petitioners in this case, was reviewed for extended home confinement. Alexander Grinis, Reg. No. 01014-138, was previously reviewed and has a Residential Reentry Center Home Confinement date of May 21, 2020. This is his first eligibility date for home detention based on his 9-month sentence, with his Projected Release Date from BOP custody on June 16, 2020. Subsequent to the updated reviews for extended home confinement consideration, Grinis was reviewed again by Unit Team, SIS, and Medical within the above criteria. Medical found that Grinis fit the criteria for being at high risk for COVID-19, and he cleared the review by Unit Team and SIS as well. Unit Team was notified to reach out to the Regional Residential Reentry Manager (RRM) to see if an earlier date could be obtained, since

he was already approved for May 21, 2020. At this time, the date was just updated to a revised home confinement date of May 5, 2020.[2]

28. Michael Gordon, Reg. No. 96426-038, is currently serving a 15-year sentence with a Projected Release Date from BOP custody on August 18, 2027. He has served approximately 5 years and 5 months, which equates to 36.6% of his term of imprisonment. Under the established criteria mentioned above, FMC Devens has determined that he does not qualify for priority consideration. His home detention eligibility date remains at February 18, 2027.

29. Angel Soliz, Sr., Reg. No. 70926-079, is currently serving a 20-year (240-month) sentence with a Projected Release Date from BOP custody on September 13, 2033. He has served approximately 4 years and 10 days, which equates to 20.1% of his term of imprisonment. Additionally, Soliz is not a candidate for extended home confinement because his recidivism risk score is too high. He has a "Low" recidivism risk score, however a "Minimum" risk score is required. Pursuant to the reviews currently be conducted for expanded home confinement review, the lowest recidivism score of "Minimum" is required. Furthermore, Soliz currently has a detainer filed by the State of Texas for a Parole Violation Warrant filed on February 2, 2017. Under the established criteria mentioned above, FMC Devens has determined that he does not qualify for priority consideration under the expanded home confinement reviews.

30. Upon information and belief, as has been submitted to me from the FMC Devens Reduction in Sentence Coordinator, within the past two weeks, approximately 114 Reduction in Sentence requests have been submitted by FMC Devens inmates, which includes 16 that were filed on April 22, 2020 alone. Of these pending and under review, 2 have been forwarded to BOP Central Office for further RIS consideration and approval as they have been determined by FMC Devens to meet RIS criteria.

31. Each of the three named Petitioners in this case was also reviewed for a Reduction in Sentence by FMC Devens. Alexander Grinis, Reg. No. 01014-138, submitted a RIS request

---

[2] It has just been relayed to me that Grinis is refusing to enter the required quarantine before his pending release to home confinement. This refusal to accept assignment into quarantine will result in a disciplinary action and the loss of his pending pre-release placement. Therefore, his placement into any home confinement date is currently subject to rescission upon the processing of a disciplinary action.

on or about April 17, 2020 and was denied on or about April 21, 2020. The sole basis for his request was seeking a release based upon potential COVID infection. It did not meet the necessary criteria for a RIS under BOP policy.

32.     Michael Gordon, Reg. No. 96426-038, submitted a request on or about April 13, 2020 and was denied on or about April 20, 2020. He also sought a release based on potential effects of a COVID infection, which alone does not meet the necessary criteria for a RIS under BOP policy.

33.     Angel Soliz, Sr., Reg. No. 70926-079, submitted a request on or about August 19, 2019 and was denied on or about September 3, 2019. He was denied at that time as not having an end of life trajectory such that he met the necessary criteria for a RIS under BOP policy. He has not submitted an appeal of that decision nor a request for a reconsideration.

Executed on this 24 day of April, 2020.

AMBER BOURKE
Case Management Coordinator
Federal Bureau of Prisons, FMC Devens