UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-10738-GAO

ALEXANDER GRINIS, MICHAEL GORDON, and ANGEL SOLIZ,
on behalf of themselves and those similarly situated,
Petitioners,

v.

STEPHEN SPAULDING, Warden of Federal Medical Center Devens,
and MICHAEL CARVAJAL, Director of the Federal Bureau of Prisons,
in their official capacities,
Respondents.

OPINION AND ORDER
May 8, 2020

O'TOOLE, S.D.J.

The petitioners, Alexander Grinis, Michael Gordon and Angel Soliz, inmates now in custody at Federal Medical Center Devens ("FMC Devens"), bring what they characterize as a class action habeas petition pursuant to 28 U.S.C. § 2241 against respondents Stephen Spaulding, Warden at FMC Devens, and Michael Carvajal, Director of the Bureau of Prisons ("BOP"). The petitioners seek to represent: "(1) a subclass of all persons who, according to applicable CDC guidelines, are at high risk of injury or death from COVID-19, due to their advanced age or medical condition(s) ('Medically Vulnerable Subclass'), and (2) a subclass of all persons who are appropriate candidates for early transfer to home confinement ('Home Confinement Appropriate Subclass')." (Pet. for Writ of Habeas Corpus Under § 28 U.S.C. 2241 & Compl. for Injunctive & Declaratory Relief ¶ 105 (dkt. no. 1).) The petitioners allege that their detention is in violation of the Eighth Amendment to the United States Constitution because of the threat of infection by the

virus COVID-19. Pending before this Court is the petitioners' Motion for Immediate Bail Consideration, Temporary Restraining Order, and Preliminary Injunctive Relief (dkt. no. 3).

The petitioners request an order of this Court "releas[ing] sufficient Class Members on bail to ensure effective social distancing at FMC Devens in compliance with CDC guidelines." (Mot. for Immediate Bail Consideration, TRO, & Prelim. Inj. Relief 1 (dkt. no. 3).) They also seek "a temporary restraining order or preliminary injunction ordering Respondents to comply with CDC guidelines and best practices to prevent the spread of COVID-19, including, without limitation, by reducing the prisoner population at FMC Devens sufficiently to permit effective social distancing." (Id. at 2.) The Court heard oral argument from both the petitioners and the respondents.

Separately the petitioners filed a Motion for Class Certification or Representative Habeas Action (dkt. no. 5). The parties have briefed but have not yet been heard in argument on that motion.

A "district court determines whether to issue a preliminary injunction by weighing four factors: '(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.'" Bl(a)ck Tea Soc'y v. City of Boston, 378 F.3d 8, 11 (1st Cir. 2004) (quoting Charlesbank Equity Fund II v. Blinds to Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004)); see also Ross–Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996)). "The sine qua non of this four-part inquiry is likelihood of success on the merits." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). "[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Id. (citing Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993)).

The petitioners have not demonstrated that they have a likelihood of prevailing on the merits of their pleaded claims.[1]

There is a substantial question whether the relief the petitioners seek is properly sought by means of a habeas petition under § 2241. The petitioners claim they are held "in custody in violation of the Constitution . . . of the United States," 28 U.S.C. § 2241(c)(3), because maintaining them in custody at FMC Devens seriously endangers their health and thus amounts to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. The respondents argue that the lawfulness of the fact or nature of the petitioners' *custody* is not put in question by the complaint; there is no complaint against the lawfulness of their convictions or the sentences imposed. Rather, the respondents characterize the petitioners' claims as relating to "prison conditions," in particular a species of overcrowding, and that accordingly their remedy should be sought by a civil rights complaint under the doctrine of Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1999).[2]

It is not necessary to resolve that dispute for now, because the petitioners have a more fundamental problem. They have not demonstrated a likelihood of success on their underlying theory of liability: that by failing to release a significant number of inmates as they demand, the

---

[1] In addition to asserting a habeas claim, the petitioners also assert claims for declaratory judgment and injunctive relief under the All Writs Act. 28 U.S.C. § 1651.

[2] There is the further complication that there may be statutory prerequisites to the release relief sought by the petitioners that might be avoided in a habeas action, and thus counsel against proceeding under that rubric. See, e.g., 18 U.S.C. § 3626(a)(3)(A)(i) (prisoner release order may not be issued unless "a court has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the Federal right sought to be remedied through the prisoner release order"). There is also a question of which judicial authority has jurisdiction to issue such an order. A "prisoner release order" may only be ordered by a three-judge court specially constituted. Id. § 3626(a)(3)(B). A "compassionate release" order altering the sentence of a convicted felon apparently may only be entered by the sentencing judge. Id. § 3582(c).

respondents have subjected them to cruel and unusual punishment in violation of the Eighth Amendment.

To succeed on such a claim, the petitioners "must satisfy both a subjective and objective inquiry: [Petitioners] must show first, 'that prison officials possessed a sufficiently culpable state of mind, namely one of "deliberate indifference" to an inmate's health or safety,' and second, that the deprivation alleged was 'objectively, sufficiently serious.'" Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 (1st Cir. 2011) (quoting Burrell v. Hampshire Cnty., 307 F.3d 1, 8 (1st Cir. 2002)). Prison officials may exhibit "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). But "deliberate indifference" requires evidence of more than poor judgment or what the law regards as "ordinary negligence." It entails conduct (or an absence of conduct) amounting to "a wanton disregard" of a prisoner's needs, Battista v. Clarke, 645 F.3d 449, 453 (1st Cir. 2011), where a prison official's action amounts to a "recklessness, 'not in the tort law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable.'" Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993) (quoting DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991)).

Both the BOP and FMC Devens have made significant changes in operations in response to COVID-19. The respondents' papers outline the steps taken by them at both the national and institutional levels. The measures taken at FMC Devens have included:

> providing inmate and staff education; conducting inmate and staff screening; putting into place testing, quarantine, and isolation procedures in accordance with BOP policy and CDC guidelines; ordering enhanced cleaning and medical supplies; and taking a number of other preventative measures to include: (a) educating inmates and staff regarding the virus and the BOP's response, and on measures that they should take to stay healthy; (b) establishing quarantine and isolation units that are physically separated from the housing units; (c) providing separate examination rooms and testing for symptomatic inmates; (d) enhancing screening of staff and visitors to FMC Devens; (e) reducing and/or prohibiting prisoner movement; (f) distributing personal protective equipment and sanitizer to staff and inmates, and

>   requiring that masks be worn in FMC Devens; (f) separating inmates by housing unit and floor to shelter in place with the fewest number of inmates; (g) modifying activities and services to provide them in the housing unit, with the fewest number of inmates; and (h) developing extensive cleaning and disinfecting procedures at FMC Devens.

(Resp'ts' Omnibus Resp. to Pet. for Writ of Habeas Corpus & Opp'n to Pet'rs' Mot. for Immediate Bail & Injunctive & Declaratory Relief 46–47) (dkt. no. 32).) The government reported at the hearing on the present motion that to that point in time only one inmate at FMC Devens had been diagnosed with the COVID-19 virus, out of a population of approximately one thousand. Data from the BOP website indicates no additional cases identified at FMC Devens since then. BOP: COVID-19 Update, Federal BOP (May 8, 2020, 4:00 PM), http://www.bop.gov/coronavirus/. These affirmative steps may or may not be the best possible response to the threat of COVID-19 within the institution, but they undermine an argument that the respondents have been actionably deliberately indifferent to the health risks of inmates.

The Attorney General has instructed BOP facilities to transfer appropriate qualifying inmates from institutional incarceration to home confinement pursuant to the recently enacted "CARES Act," P.L. 116-136, 134 Stat. 281 (Mar. 27, 2020). Indeed, the Court was informed at the hearing on the present motion that FMC Devens was preparing to transfer petitioner Grinis to home confinement in early May, but that he had objected to one of the steps in the process, completion of a fourteen-day quarantine period. It is not clear what his status is now. Unlike petitioner Grinis, however, petitioners Gordon and Soliz are serving lengthy sentences for serious drug offenses. They have not shown that it is likely that they would qualify for transfer from incarceration to home confinement under the current BOP eligibility requirement, and therefore they have not shown that they personally have a likelihood of success in obtaining the relief prayed for in their petition.

Finally, the petitioners' request to be admitted to bail also lacks merit. While a district court may have "inherent power" to release a habeas petitioner pending determination of the merits of the petition, see Woodcock v. Donnelly, 470 F.2d 93, 94 (1st Cir. 1972), a bail decision is a highly particularized one, involving detailed consideration of factors such as the nature and circumstances of the offense of conviction, the history and characteristics of the petitioner, and the nature or seriousness of any danger to the community from the release of the prisoner. See 18 U.S.C. § 3142(g). The petitioners do not address such considerations, instead basing their request for bail on the circumstances of their confinement alone, rather than on the particular factors as applied to each of them. So even if this action is properly characterized as a habeas petition, which is subject to doubt, the basis for making a considered bail decision is lacking.

For the foregoing reasons, the Motion for Immediate Bail Consideration, Temporary Restraining Order, and Preliminary Injunctive Relief (dkt. no. 3) is DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
Senior United States District Judge