UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-10738-GAO

ALEXANDER GRINIS, MICHAEL GORDON, and ANGEL SOLIZ,
on behalf of themselves and those similarly situated,
Petitioners,

v.

STEPHEN SPAULDING, Warden of Federal Medical Center Devens,
and MICHAEL CARVAJAL, Director of the Federal Bureau of Prisons,
in their official capacities,
Respondents.

OPINION AND ORDER
June 11, 2020

O'TOOLE, S.D.J.

Invoking 28 U.S.C. § 2241, the petitioners ask the Court to grant their request for the issuance of a writ of habeas corpus. Since at least the time of Magna Carta, the Great Writ has been available to free a petitioner from unlawful confinement by the sovereign. See Neil Douglas McFeeley, The Historical Development of Habeas Corpus, 30 SMU L. Rev. 585, 585 (1976). The writ is available when the petitioner "is in custody in violation of the Constitution . . . of the United States." 28 U.S.C. § 2241(c)(3).

The petitioners[1] allege that they and other inmates committed at the United States Bureau of Prisons ("BOP") Federal Medical Center Devens ("FMC Devens") in Ayer, Massachusetts, are held in conditions placing them in "maximum danger from COVID-19." (Pet. for Writ of Habeas Corpus Under § 28 U.S.C. 2241 & Compl. for Injunctive & Declaratory Relief ¶ 10 (dkt. no. 1).)

---

[1] Alexander Grinis is no longer in custody at FMC Devens. Since the filing of the petition, he has been released pursuant to a grant of compassionate release under 18 U.S.C. § 3582(c) by the judge who imposed his original sentence.

They assert that the respondents, who are the warden at FMC Devens and the director of the BOP, "have demonstrated deliberate indifference to the severe and obvious risk of rampant infection and death that COVID-19 poses to FMC Devens prisoners, in violation of the U.S. Constitution's Eighth Amendment prohibition against cruel and unusual punishment." (Id. ¶ 12.) The petition alleges that the respondents "have failed to provide prisoners the ability to physically distance by ordering compassionate release and/or implementing immediate transfers to home confinement with sufficient speed or in sufficient numbers" in order to make "effective social distancing" possible. (Id. ¶ 13.) In brief, the petitioners contend that the prison conditions that respondents have permitted to exist amount to deliberate indifference to the good health and safety of all inmates, themselves included, and thus amount to unconstitutional imprisonment. The principal relief the petitioners seek is an order requiring the respondents to release a sufficient number of inmates through either compassionate release or transfer to home confinement to "permit effective social distancing." (Id. ¶ 123.)

The petition is asserted as a class action under Federal Rule of Civil Procedure 23. It proposes "a class of all persons in custody at FMC Devens," which is said to include two "subclasses": "all persons who, according to applicable [Centers for Disease Control and Prevention] guidelines, are at high risk of injury or death from COVID-19, due to their advanced age or medical condition(s)" and also "all persons who are appropriate candidates for early transfer to home confinement." (Id. ¶ 105.) The petitioners have moved for class certification and the respondents have opposed it.

Prior to the question of class certification, however, is the taxonomic question of how properly to understand the nature of the petitioners' claims. They insist that they seek the writ (or writs?) of habeas corpus because the remedy they seek is the discharge of imprisoned bodies from

custody. The respondents say that what the petitioners seek in substance is a "prisoner release order" as defined by the Prison Litigation Reform Act ("PLRA"), codified at 18 U.S.C. § 3626, to ameliorate allegedly unconstitutional conditions of confinement. The respondents are right.

The proper categorization of a claim is to be determined by its substance, not simply by the nomenclature chosen to identify it. "[A] pleading will be judged by the quality of its substance rather than according to its form or label." Rodriguez v. Municipality of San Juan, 659 F.3d 168, 173 (1st Cir. 2011) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)).

> The core remedy provided by the writ of habeas corpus is release from unlawful custody.
>
> It is clear, not only from the language of [§ 2241(c)(3)] . . . , but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.

Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).

That is not what the petitioners here say they want. What they say they want is for the FMC Devens inmate population to be reduced sufficiently to promote feasible "social distancing," and while that may include releasing the petitioners themselves, it need not necessarily occur; it would be enough if a number of *other* prisoners were released to get to a satisfactory overall population level.

A proper § 2241 habeas petition asks that the petitioner himself be afforded direct relief in the form of release from existing custody. Some years ago, the Supreme Court left open "the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of the confinement itself." Bell v. Wolfish, 441 U.S. 520, 526 n.6 (1979); Preiser, 411 U.S. at 499–500 ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie

to remove the restraints making the custody illegal. But we need not in this case explore the appropriate limits of habeas corpus as an alternative remedy to a proper action under § 1983." (citation and footnote omitted)). "[M]ore recently, the Supreme Court noted that it has 'never followed [that] speculation in [Preiser].'" Brian R. Means, Federal Habeas Manual § 1:29 (May 2020) (quoting Muhammad v. Close, 540 U.S. 749, 751 n.1 (2004) (per curiam)).[2]

The petitioners have made it quite clear they do not necessarily seek direct release from custody for themselves. The remedy they do seek—that some yet to be determined number of yet to be identified inmates should be released—is not a proper function of the writ.

---

[2] Circuit courts have been divided over the question:

> A majority of circuits have concluded that constitutional challenges to prison decisions that would not necessarily affect the length of confinement, such as claims involving conditions of confinement—transfers to administrative segregation, exclusion from prison programs, and suspension of privileges—must be brought as a civil rights action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics or under the Administrative Procedure Act. . . . But other circuits have held that conditions-of-confinement claims may be brought in the habeas corpus context.

Brian R. Means, Postconviction Remedies § 5:7 (July 2019) (footnotes omitted). In dictum that is decidedly obiter, the First Circuit has speculated that "[i]f the conditions of incarceration raise Eighth Amendment concerns, habeas corpus is available," United States v. DeLeon, 444 F.3d 41, 59 (1st Cir. 2006), but that question was neither presented nor decided in that case.

The First Circuit has held that in certain circumstances a habeas petition can be the appropriate means for a prisoner to seek reduction in the restrictiveness of his custodial condition. See González-Fuentes v. Molina, 607 F.3d 864, 873 (1st Cir. 2010); Brennan v. Cunningham, 813 F.2d 1, 4 (1st Cir. 1987). Superficially, those cases could broadly be thought of as challenges to those petitioners' "conditions of confinement," but not in the same sense as that term is used by the petitioners in this case and not in a way that would implicate the PLRA. In González-Fuentes and Brennan, the petitioners claimed that they had been removed from less restrictive conditions of confinement outside of prison and unlawfully returned to confinement in prison; they sought habeas relief in the form of release from prison back to their previous less restrictive status. González-Fuentes, 607 F.3d at 873; Brennan, 813 F.2d at 1, 4. The petitioners here present no such claim; there is no challenge to the lawfulness of their present sentences of imprisonment under their respective judgments of conviction.

What the petitioners seek in actual substance is, as noted above, a "prisoner release order," defined by the PLRA:

> [T]he term "prisoner release order" includes any order, including a temporary restraining order or preliminary injunctive relief, that has the purpose or effect of reducing or limiting the prison population, or that directs the release from or nonadmission of prisoners to a prison . . . .

18 U.S.C. § 3626(g)(4). "[R]educing or limiting the prison population" at FMC Devens is exactly the chief relief the petitioners pray for. That makes their action a "civil action with respect to prison conditions" as defined by the PLRA:

> [T]he term "civil action with respect to prison conditions" means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison . . . .

Id. § 3626(g)(2).

An illustrative case is Brown v. Plata, 563 U.S. 493 (2011). In that case, the Supreme Court upheld lower courts' orders requiring the California prison system to reduce overcrowding that was so severe that it prevented inmates from having adequate access to medical care to a degree that it amounted to cruel and unusual punishment in violation of the Eighth Amendment's prohibition. The causes of action that justified those orders were civil rights suits prosecuted and adjudicated in conformance with the PLRA. Similar claims are available to the petitioners here under the doctrine of Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

The PLRA, however, imposes a precondition to the entry of a "prisoner release order":

> In any civil action with respect to prison conditions, no court shall enter a prisoner release order unless—
>    (i)    a court has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the Federal right sought to be remedied through the prisoner release order; and
>    (ii)   the defendant has had a reasonable amount of time to comply with the previous court orders.

5

18 U.S.C. § 3626(a)(3)(A). This provision plainly establishes two factual conditions precedent to a "prisoner release order." It cannot be ignored simply because a judge thinks, however conscientiously, that this would be a good time to ignore it.

Indeed, to deter that eventuality, Congress restricted the issuance of a "prisoner release order" by imposing both an important procedural requirement and a substantive condition to such an order. The procedural requirement limits the power to issue such an order to a specially constituted three-judge court. Id. § 3626(A)(3)(B). The substantive condition is that the three-judge court must conclude, by clear and convincing evidence, that

> (i)   crowding is the primary cause of the violation of a Federal right; and
> (ii)  no other relief will remedy the violation of the Federal right.

Id. § 3626(A)(3)(E).

Given the urgency that the petitioners apprehend, it is not surprising that they want to avoid having to comply with such procedural and substantive restrictions, and they contend they have found a way to do that. The PLRA's statutory definition of "civil action with respect to prison conditions," quoted in part above, has a carve out. A "civil action with respect to prison conditions" does not include habeas corpus proceedings challenging "the fact or duration of confinement in prison." Id. § 3626(g)(2). Hence the petitioners' framing of their pleading here.

They contend that the "fact . . . of confinement" means effectively all the pertinent facts about a prisoner's incarceration, including, for example, overcrowding. And "duration" means that any order to shorten a sentence of incarceration also is excepted from PLRA's strictures if it is issued in response to a habeas petition. The substantive problem with those understandings of the habeas exception is that they are so broad as to provide an easy evasion of the requirements of the PLRA, and that cannot be a correct understanding of the statutory words. A habeas petition always has something to do with the fact and duration of imprisonment, but interpreting the exception so

broadly as to authorize use of the writ to cover the sort of claims advanced in this case would render the PLRA's limiting conditions and requirements nugatory. Why would an inmate file a civil rights action under the <u>Bivens</u> doctrine or under 42 U.S.C. § 1983 that would be subject to the conditions and restrictions of the PLRA when he could avoid those conditions and restrictions wholesale simply by styling his action as a "habeas corpus proceeding[] challenging the fact or duration of confinement in prison"? Poof! The PLRA disappears.

It is a familiar canon of construction to construe the words of a statute to give harmonious effect to all its parts. <u>See</u> <u>Hibbs v. Winn</u>, 542 U.S. 88, 101 (2004). The petitioners' proposed understanding of the habeas exception to the definition of "civil action with respect to prison conditions" does the opposite; it would read out all the PLRA's prerequisite and restrictive provisions so long as the court pleading is styled as "habeas petition" rather than "complaint."

Properly understood, the "fact . . . of imprisonment" simply means *that the petitioner is imprisoned*, because the traditional writ is an available remedy to a person who is actually in some recognized form of custody. The petitioners here erroneously choose to read it as if the language were plural: the *facts* of imprisonment, as in how or under what conditions he is imprisoned. Even if that were a plausible reading of the words by themselves, for the reasons just discussed it should not be a preferred one. Similarly, the "duration of imprisonment" is properly understood as referring to a traditional habeas remedy for circumstances where the prisoner has been kept in custody beyond the authorized term. The habeas carve-out in the definition of a "civil action with respect to prison conditions" is purposefully narrow.

Finally, there is the curious circumstance that the petitioners might not, in the end, be entitled themselves to habeas relief but nevertheless purport to bring the claim on behalf of other inmates who would be. There is nothing in the long history of the writ that would support

permitting prisoner A to seek the writ to effect prisoner B's discharge from custody, but that is an outcome that the petitioners expressly propose. And this brings us back to the class certification motion.

It would be unusual, but it is not theoretically impossible, for there to be a class action for habeas relief for a large number of prisoners whose sentences of confinement, for example, were all voidable for an identical reason, such as the invalidity of a common statute of conviction. But at least in such a case, the named representative petitioners would have to show that they themselves were entitled to the writ on the same basis as the members of the proposed class. By their own admission, the named petitioners here might not be. That is itself enough to end the question of class certification with them as class representatives.

But the implications of the foregoing discussion go further than denying class certification. The two remaining petitioners have not challenged the fact or duration of their own confinement at FMC Devens, and they may not be able to do so credibly. In any event, they themselves say they do not necessarily want to be released, a very odd thing for habeas petitioners to say. This action is thus revealed as a false flag operation. Flying the banner of habeas corpus, it is nevertheless *in substance* a "civil action with respect to prison conditions" that seeks the entry of a "prisoner release order" as those terms are defined in the PLRA.

Consequently, for the reasons discussed herein, the several pending motions—the Motion for Class Certification or Representative Habeas Action (dkt. no. 5), the Motion to Consolidate Cases (dkt. no. 44), the Motion to Substitute Named Petitioner (dkt. no. 49), and the Motion to Reconsider (dkt. no. 52) —are all DENIED.

Section 3626(a)(3)(C) affords the petitioners the opportunity to request relief properly available under the PLRA by filing "materials sufficient to demonstrate that the requirements of

subparagraph (A) have been met." If the petitioners wish to do so, they must file such materials within seven days of the entry of this Opinion and Order. If they do not do so, this action will be DISMISSED.[3]

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
Senior United States District Judge

---

[3] The petition purports also to assert claims under the All Writs Act and the Declaratory Judgment Act, but the petitioners have not advanced any developed argument as to those claims.